IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DIANA M. NICELY                          :

                                         :

    v.                                   :   Civil Action No. DKC 13-2827

                                         :

SAFEWAY, INC.                            :

                                         :

**MEMORANDUM OPINION**

Presently pending and ready for review in this Family Medical Leave Act case is the motion for summary judgment filed by Defendant Safeway, Inc. (ECF No. 47). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

## I.   Background[1]

Plaintiff Diana M. Nicely was a meat wrapper at Defendant's grocery store in Damascus, Maryland. On June 25, 2010, she went into the store's freezer to get a product, and while in there, she slipped and hit her back on a stack of wood pallets. On June 29, 2010, she visited a local medical clinic, complaining of lower back pain. A workers' compensation claim was filed with Defendant, she obtained a note excusing her from work, and

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party.

returned to work on July 5, 2010. She made numerous visits to medical professionals in the following months, continuing to complain of back pain. She also visited Nurse Practitioner Kate Smith at the Opal Medical Group on August 16, 2010 to treat an upper respiratory infection. On November 4, 2010, Dr. Samina Anwar examined Plaintiff for continuing back issues and authorized light duty, instructing her to avoid heavy lifting of more than ten pounds and recommended that she see Dr. Ramakrishna Kosuri for physical therapy and pain management. Ms. Sandy John, a registered nurse representing Defendant who accompanied Plaintiff to this appointment, sent in the light duty note and referral to Defendant's workers' compensation office. (ECF No. 60-1, at 95-96). Beginning that day, Plaintiff was put on light duty in the meat department. Defendant scheduled an independent medical examination ("IME") with Dr. David Johnson on November 18, 2010. Plaintiff failed to make this appointment and it was rescheduled for December 13, 2010. On November 22, 23, and 24, 2010, Plaintiff called in sick, but never spoke with a store manager or assistant store manager as required by Safeway policy, instead leaving messages with lower-level employees when told management was not available. (ECF No. 60-1, at 4-5, Plaintiff Aff.).[2] Plaintiff

---

[2] Defendant's employee handbook states that "[w]hen it is necessary for you to be away from work because of illness or for

was out of work for the entire week of November 29, 2010, this time after speaking with the Assistant Store Manager.

In her affidavit, Plaintiff states that after Dr. Anwar recommended she see Dr. Kosuri, she telephoned Dr. Kosuri's office to schedule an appointment but was told she needed approval from her worker's compensation office. She states that she called and left a message with Ms. John and Ms. John's supervisor but no one ever got back to her. According to Plaintiff, she eventually discovered that Defendant would not pay for treatment by Dr. Kosuri. Plaintiff offered to pay for it herself, but Dr. Kosuri would not accept this arrangement because it was a workers' compensation injury. (ECF No. 60-1, at 5-6).

Defendant's FMLA policy contemplates two methods for employees to be placed on FMLA-leave: (1) by the employee

---

any reason, you are required to contact your manager in advance. If advance notice is not possible, you should make a sincere effort to contact the manager or person in charge within the first hour of your scheduled work shift." (ECF No. 47-2, at 15).

Mr. Mark Woodfield, the store manager, testified that a note was left on his desk stating that Plaintiff had been trying to contact him or get a call from a manager and she wants him to call her. Mr. Woodfield went to Plaintiff's supervisor to get Plaintiff's phone number, but the supervisor only had her husband's phone number. Mr. Woodfield stated that he called Plaintiff's husband but could not recall whether he spoke with him, or when this note was given to him as it was undated. (ECF No. 60-1, at 61-62, Trans. 61:5 – 63:2; *id.* at 65 (copy of the note)).

3

initiating a request for leave, or (2) the employer initiating the leave process when it has been notified that the employee is absent on account of a serious health condition.  (ECF No. 47-2, at 113).  The policy goes on to provide that:

> If an employee is absent from work for a Family Leave-qualifying reason, and the absence has not yet been designated by the Company as Family Leave, upon return to work the employee has 3 business days to notify the Company that the absence may qualify for Family Leave.  The employee must support the request with the required health care provider certification.  If the employee fails to report the qualifying reason and to provide the required certification within 5 business days, the absence will not be designated as Family Leave and the employee will have no family leave protection for the absence.
>
> . . .
>
> The Company may designate an employee's time off as Family Leave if available information indicates that the time off meets leave criteria.
>
> . . .
>
> Whenever a Health Care Provider Certification is required, the employee has 15 calendar days from the date of the Company's request to provide it.

(*Id.* at 113-14).  A footnote to the above portion states that "[m]erely contacting one's supervisor to 'call in sick' is not notice to the Company of a 'serious health condition' nor is it sufficient to notify the Company that the employee's absence may

qualify for Family Leave designation under this policy." (*Id.* at 116).

On December 6, 2010, Mr. Mark Woodfield, the store manager, called Plaintiff and informed her that she was scheduled to work light duty for the week beginning the next day. According to Mr. Woodfield, Plaintiff told him she would call back and let him know whether she could work light duty or not, which Plaintiff never did. Mr. Woodfield also states that he asked Plaintiff to provide medical documentation to back up her claims. (ECF No. 47-1, at 65, Trans. 81:14-19). Plaintiff has a different version of events. According to her, she told Mr. Woodfield that she needed to get off the schedule because she was in a lot of pain on account of her back injury and the worker's compensation office was not following through on the referral to Dr. Kosuri. According to Plaintiff, Mr. Woodfield responded that she was on the schedule for light duty and that she was to report for light duty. Plaintiff asked Mr. Woodfield if he would help her get an appointment with Dr. Kosuri. Mr. Woodfield stated he would not, because that was Plaintiff's responsibility.[3] According to Plaintiff, Mr. Woodfield never

---

[3] Mr. Woodfield gave testimony similar to Plaintiff's version in Plaintiff's 2011 worker's compensation hearing:

> Q: [W]hen I [Plaintiff] called you I asked you to take me off the schedule because I

asked her for medical documentation nor did he ever tell her to call him back. (ECF No. 60-1, at 6). Plaintiff did not show up for work or call to inform the store of her absence for her scheduled shifts on December 7, 8, 10, and 11, 2010. For each unexcused absence that week, Mr. Woodfield wrote up a "Confirmation of Performance Interview" documenting Plaintiff's substandard attendance, although these forms were never signed by Plaintiff to acknowledge receipt.

In her affidavit, Plaintiff states that she called Dr. Anwar on December 6 and requested that she be taken off work for

---

needed to get – to see a doctor and they weren't following through, correct?

A: Correct.

. . .

A: At that time I told you that you were on the schedule for light duty and that you needed to report to work on light duty and I would work any arrangements that you had for doctor's appointments or anything like that, but you were to report to work on light duty.

. . .

Q: So on November – December 6th when I was calling around trying to get this appointment and get the help – did you call to try to help me keep my job by (inaudible) scheduling a doctor's appointment?

A: No, that's your responsibility.

(*See* ECF No. 60-1, at 72-73, Trans. 81:17 – 83:6)

6

December 3 through December 13 because of her pain. That day, Dr. Anwar sent a letter to Dr. Waseem of the Opal Group, Plaintiff's family doctor. The letter stated that

> [Plaintiff] was seen in my office for a follow up visit on 11-04-2010. The patient was diagnosed with lower lumbar and sacral radiculopathy. The patient was advised to avoid lifting more than 10 pounds. I recommended for the patient to be seen for physical therapy and pain management, she was given the name and number to Dr. Kosuri's office. In the meantime, she can continue anti-inflammatory medicine, Lyrica and muscle relaxant as needed. I will see her back in my office only on an as needed basis.

(ECF No. 60-1, at 110). On December 7, 2010, Ms. Smith – the Nurse Practitioner who treated Plaintiff in August 2010 – provided a note that Plaintiff has been unable to return to work from December 3 to December 10, 2010. (ECF No. 47-2, at 118). Plaintiff testified that neither Ms. Smith nor anyone at Opal Medical Group treated Plaintiff that day. (ECF No. 47-1, at 23, Trans. 159:11-14). Plaintiff has provided what appears to be a call log from Opal that has the following entry for December 7, 2010: "Left message for [Plaintiff] to call our office she requested a work note and Kate said that's fine to do we just need to know th[e] dates she needs. TR." (ECF No. 60-1, at 106).[4]   Plaintiff faxed this note to 301-391-6222, which she

---

[4] Plaintiff does not reference this document anywhere in her brief or explain what it is.

believed to be Defendant's facsimile number.  In her cover
letter accompanying the note, she wrote: "Called to confirm
Doctors 12-13-10 still waiting on call from Robinwood in
Hagerstown.  Need off until we know what due." (ECF No. 47-2,
at 138).[5]  Mr. Jim Unger, owner of CTI Underground, LLC, provided
an affidavit stating that his company owns that fax number and
provided a corroborating phone bill.  (*Id.* at 120-136).
Plaintiff testified that she called Defendant after sending the
fax and confirmed that it was received, although she could not
remember with whom she spoke at Safeway.[6]  Defendant's doctor,
David Johnson, noted that Ms. Smith's note did not document a
reason for Plaintiff's excusal for this time period.  Plaintiff
was not seen by Ms. Smith during that time; the last note in the
record from Ms. Smith was from nearly four months prior, for
acute bronchitis and sinusitis. (ECF No. 47-2, at 140).

On December 7, 2010, Defendant's human resources department
was informed of Plaintiff's apparently unexcused absences and

---

[5] Robinwood appears to be the orthopedic center that employs
Dr. Kosuri.

[6] In her complaint, Plaintiff states that she sent two faxes
to Defendant on December 7, 2010.  The first was the note from
Ms. Smith, and the second was from Plaintiff advising "that she
needed additional time off because of the on-going severity of
the pain in her back and that she was waiting for approval from
her employer to see a specialist for it." (ECF No. 5 ¶ 5).
Plaintiff appears to have abandoned this version of events, as
her response to Defendant's motion mentions only the fax
containing Ms. Smith's note.

determined that, based on the number of consecutive absences without proper notice, it appeared Plaintiff had abandoned her job. The HR department spoke with its workers' compensation office which confirmed that according to the documentation it had received, Plaintiff was able to work light duty. Following the Confirmation of Performance Interview notices, HR rechecked with the workers' compensation office to see if it had any documentation to support the absences and confirmed there was none, but was informed that Plaintiff had an IME scheduled in the near future. (ECF No. 47-1, at 140-41, Shahan Aff.).

The IME was rescheduled for December 13, 2010. Defendant arranged for transportation for Plaintiff, but no one answered the door when the driver arrived at Plaintiff's residence. Plaintiff states that no one ever came to pick her up as her dogs would bark whenever someone came to the door and the dogs never barked. Based on Plaintiff's failure to show up for the IMEs and her repeated unexcused absences, Defendant's HR department terminated Plaintiff's employment on December 14, 2010, in accordance with Defendant's job abandonment policy.[7] Defendant states that it has no record that Plaintiff requested Family Medical Leave or any documentation indicating that

---

[7] Defendant's job abandonment policy provides that "absence without notice for three (3) consecutive shifts will constitute job abandonment and will result in termination." (ECF No. 47-2, at 8). Defendant states that this policy is provided to all employees at the time they are hired.

Plaintiff was unable to work in November or December 2010 on account of a serious health condition.  Dr. Johnson – after examining Plaintiff on February 14, 2011 and June 13, 2011 – concluded that the symptoms Plaintiff was experiencing stemmed from her preexisting back problems, and "therefore any time off between 12/03/2010 and 12/30/2010, in my opinion, would not be related to the injury of 06/25/2010."  (ECF No. 47-2, at 130). Plaintiff's doctor, Michael Franchetti, arrived at a different conclusion in a January 7, 2011 report, finding that Plaintiff's back problems were due to the June 25, 2010 injury, but she would be available for limited duties at work.  (ECF No. 60-1, at 48-49).  Plaintiff filed a claim with the state Worker's Compensation Commission, which was eventually settled.

On September 27, 2012, Plaintiff filed a complaint in the Circuit Court for Prince George's County, Maryland, alleging that Defendant terminated her employment instead of giving her the leave to which she was entitled under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq* ("Count I"), and that she was terminated because she filed a worker's compensation claim, in violation of Md. Code Ann., Lab. & Empl. § 9-1105 ("Count II").  (ECF No. 5).  Defendant answered on February 1, 2013 (ECF No. 13), and discovery commenced.  On July 24, 2013, Defendant moved for summary judgment on both counts. (ECF No. 47).  Plaintiff filed her opposition on September 18,

2013 (ECF Nos. 60), to which Defendant replied on November 7, 2013 (ECF No. 71).   Defendant removed the case to this court on September 25, 2013, citing federal question and diversity of citizenship as the jurisdictional bases.   Plaintiff filed a motion to remand, which was denied in a Memorandum Opinion and Order on December 12, 2013, ruling that only Count I was removed to this court.   (ECF No. 75).[8]

## II.   Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).   The moving party bears the burden of showing that there is no genuine dispute as to any material fact.   However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.   *Celotex,* 477 U.S. at 322–23.   Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion

---

[8]  28 U.S.C. § 1445(c) prohibits an action in state court arising under the workmen's compensation laws of such state to be removed.

with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   477 U.S. at 249 (1986).   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Id.*   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."   *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).   The mere existence of a "scintilla" of

evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (*quoting Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. Analysis

### A.  Workers' Compensation Settlement

Defendant's first argument is that Plaintiff agreed to release Defendant from all claims stemming from these events as part of the settlement of Plaintiff's workers' compensation claim.  To memorialize their agreement, the parties used Form H-09, created by the Maryland Workers' Compensation Commission. Defendant points to the following clause of Form H-09:

> The Claimant hereby accepts this Agreement and the aforesaid payment(s) in final compromise and settlement of any and all Claims which the Claimant, his or her personal representative, dependents, wife and children or any other parties who become beneficiaries under the Workers' Compensation Law, might now or could hereafter have under the provision of said

13

> Law, arising out of the aforesaid injury or
> disablement or the disability resulting
> therefrom, and does hereby, on behalf of
> himself or herself and all of said other
> parties, release and forever discharge the
> Employer and insurer, their personal
> representative, heirs, successors and
> assigns, from all other claims of whatsoever
> kind which might or could hereafter arise
> under the Law from the said injury,
> disablement or disability.

(ECF No. 47-2, at 146).   Defendant argues that this clause
eliminates *all* claims stemming from Plaintiff's June 25, 2010
injury, not just those claims that could be brought under the
workers' compensation laws.   It points to the clause's two uses
of the term "Law": first, it refers to "the provision of *said
Law*," clearly referring to the "Workers' Compensation Law"
mentioned just earlier.   The second use, however, does not have
any modifier; instead it bars all claims that could "arise under
*the Law* from the said injury."

   Defendant's arguments are unpersuasive.   "The cardinal rule
of contract interpretation is to give effect to the parties'
intentions."   *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge
Cemetery Co.*, 434 Md. 37, 51 (2013).   The court's job in
interpreting a contract is to "determine from the language of
the agreement itself what a reasonable person in the position of
the parties would have meant at the time it was effectuated."
*Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261
(1985).   "[T]he contract must be construed in its entirety and,

if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167 (1964). The capitalization of the word "Law" controls this issue. Generally, one capitalizes a general term when desiring to use it as shorthand for a specific thing or concept. Here, the thing that "Law" refers to is the earlier reference in the same clause to "Workers' Compensation Law." Other portions of the contract demonstrate that the capitalization of "Law" was intentional as it uses this tool elsewhere: the phrase "any workers' compensation benefit" is used to refer to the general concept of workers' compensation while the capitalized "Workers' Compensation Law" is intended to refer to the specific law of Maryland. Furthermore, the preamble to the contract states that the "parties have reached an agreement providing . . . for a final compromise and settlement of any and all claims which the Claimant . . . might now or could hereafter have under the provisions of the Workers' Compensation Law against the Employer and/or the Insurer." This clause further illustrates that the parties intended to preclude only those claims stemming from Plaintiff's injury that arise under the Maryland Workers' Compensation Law, not all potential claims under any law.

Defendant cites to two cases which are not helpful to its position. One case involved a contract that clearly stated that the claimant had no claim under the law that was at issue in his subsequent complaint, *Ellett v. Giant Food, Inc.*, 66 Md.App. 695, 701 (1986), and the other would be applicable only if the term "Law" refers to all laws instead of just the Maryland Workers' Compensation Law, which the language of this contract does not support, *Pope v. Bethesda Health Ctr., Inc.*, 813 F.2d 1306, 1307-08 (4th Cir. 1987). Consequently, Plaintiff's FMLA claim is not subject to the release agreed to as part of the settlement of Plaintiff's workers' compensation claim.

**B. FMLA Claim**

The FMLA provides that an eligible employee[9] must be allowed to take up to twelve work weeks of unpaid leave during any twelve-month period because of a serious health condition that prevents the employee from performing his or her job. 29 U.S.C. § 2612(a)(1)(D). Two types of claims exist under the FMLA: (1) "interference," in which the employee alleges that an employer denied or interfered with her substantive rights under the FMLA, and (2) "retaliation," in which the employee alleges that the employer discriminated against her for exercising her FMLA

---

[9] An "eligible employee" is one who has been employed for more than twelve months before requesting leave under the FMLA, and has worked at least 1,250 hours within that period. 29 U.S.C. § 2611(2)(A). There is no dispute that Plaintiff was an "eligible employee."

rights.  *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294-95 (4th

Cir. 2009).  In her complaint, Plaintiff claims that

"[t]erminating the Plaintiff, without allowing her medical leave

to address her serious medical condition, constituted a

violation of the [FMLA]."  (ECF No. 5 ¶ 14).  Defendant, in its

motion, construed Plaintiff's claim as one for interference, and

Plaintiff responded in kind.

> To establish unlawful interference with an
> entitlement to FMLA benefits, an employee
> must prove that: (1) she was an eligible
> employee; (2) her employer was covered by
> the statute; (3) she was entitled to leave
> under the FMLA; (4) she gave her employer
> adequate notice of her intention to take
> leave; and (5) the employer denied her FMLA
> benefits to which she was entitled.

*Wonasue v. Univ. of Md. Alumni Ass'n*, --- F.Supp.2d ----, at *13

(D.Md. Nov. 22, 2013) (*quoting Rodriguez v. Smithfield Packing

Co.*, 545 F.Supp.2d 508, 515 (D.Md. 2008)).  The employee also

must prove "that the violation prejudiced her in some way."

*Anderson v. Discovery Commc'ns, LLC*, 517 F.App'x 190, 197 (4th

Cir. 2013) (*citing Ragsdale v. Wolverine World Wide, Inc.*, 535

U.S. 81, 89 (2002); 29 U.S.C. § 2617(a)).  Neither party

disputes that Plaintiff has satisfied the first two

requirements; Defendant argues that Plaintiff has failed to

demonstrate the entitlement and notice prongs and, in addition,

it had a legitimate reason for termination wholly unrelated to

Plaintiff's FMLA leave.

The FMLA defines "serious health condition" as: "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  The FMLA also grants the Secretary of Labor authority to promulgate regulations implementing the Act.  *Id.* § 2654.  Pursuant to this authority, the Secretary promulgated a regulation further defining "serious health condition."  The regulation states: "(a) For purposes of FMLA, 'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115."  29 C.F.R. § 825.113(a).  The regulation provides that "[t]he term 'incapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom."  *Id.* § 825.113(b).

Plaintiff does not allege that she experienced inpatient care, so the focus falls on whether Plaintiff's condition involved "continuing treatment by a health care provider."  The regulations provide that such a situation exists in either of the following circumstances:

(a) Incapacity and treatment.  A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a).

Defendant argues that Plaintiff has failed to provide adequate notice of her need for FMLA leave.  "An employee is mandated to provide notice to her employer when she requires FMLA leave." *Rhoads v. FDIC*, 257 F.3d 373, 382 (4th Cir. 2001); *see also Rodriguez v. Smithfield Packing Co.*, 545 F.Supp.2d 508, 515-16 (D.Md. 2008) ("The core requirements for triggering an employer's obligations [under the FMLA] are a *serious health condition* and *adequate communication*, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply." (emphasis in original)).  The Fourth Circuit has explained the notice requirement as follows:

> Where the need for leave is unforeseeable,
> "an employee should give notice to the
> employer . . . as soon as practicable under
> the facts and circumstances of the
> particular case." [29 C.F.R.] § 825.303(a).
> At bottom, "[a]n employee shall provide at
> least verbal notice sufficient to make the
> employer aware that the employee needs FMLA-
> qualifying leave, and the anticipated timing
> and duration of the leave." *Id.* §
> 825.302(c). The employee, however, "need
> not expressly assert rights under the FMLA
> or even mention the FMLA, but may only state
> that leave is needed. . . ." *Id.* The
> employer should inquire further to ascertain
> whether it is FMLA leave that is being
> sought and to obtain further details of this
> leave. *See id.*

*Rhoads*, 257 F.3d at 382-83 (second alternation in original).

> The employer will be expected to obtain any
> additional required information through
> informal means. An employee has an
> obligation to respond to an employer's
> questions designed to determine whether an
> absence is potentially FMLA-qualifying.
> Failure to respond to reasonable employer
> inquiries regarding the leave request may
> result in denial of FMLA protection if the
> employer is unable to determine whether the
> leave is FMLA-qualifying.

29 C.F.R. § 825.303(b). Most courts to consider the issue view

notice for the purposes of the FMLA as a question of fact. *See*

*Clinkscale v. St. Therese of New Hope*, 701 F.3d 825, 827 (8th

Cir. 2012); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691

F.3d 294, 303 (3[d] Cir. 2012); *Burnett v. LFW, Inc.*, 472 F.3d 471,

479 (7th Cir. 2006). The United States Court of Appeals for the

Sixth Circuit has taken a slightly different tack, holding that

"it is within the province of the jury to determine the facts of the notice given, [but] it is for the court to determine whether those facts are sufficient reasonably to give an employer notice as required by the FMLA." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003).

Defendant is not clear as to how it views Plaintiff's notice as insufficient as it provides a great deal of discussion on the standards but does not connect those standards with Plaintiff's alleged actions or inactions.  Given its citations, it appears to argue that Plaintiff did not put Defendant on notice because she merely called in sick without providing more information, a situation the regulations and case law have found to be insufficient.  *See* 29 C.F.R. § 825.303(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."); *Adams v. Wallenstein*, 814 F.Supp.2d 516, 526 (D.Md. 2011) ("simply calling in 'sick' is insufficient to put an employer on notice that FMLA leave may be needed").

Plaintiff argues that the reports from Ms. John to Safeway put Defendant on notice that Plaintiff had a "serious health condition" which could trigger FMLA-leave, and she provided notice that she was taking leave because of that "serious health condition" when she spoke with Mr. Woodfield on December 6, 2010.  As to general notice of a potential FMLA issue, she

21

refers to the November 23, 2010 report from Ms. John to Ms. Milazzo, a member of Defendant's workers' compensation office. The report lists Plaintiff's current diagnosis as "[l]ower back pain with lumbar radiculopathy." An MRI scan revealed that Plaintiff still had a bulging disc in her back, but that it is a "little bit more prominent." The report recounts that Plaintiff requested to be placed in an off work status, but Dr. Anwar would only provide a light duty release and a referral to Dr. Kosuri who would determine work restrictions and if any additional treatment was necessary. (ECF No. 60-1, at 28-29). In addition, she had missed work from June 29 through July 4, 2010 because of her injury and had been in contact with Defendant's workers' compensation office. Viewing the evidence in the light most favorable to Plaintiff, Safeway was on notice that she had a "serious health condition."

The question then becomes whether Plaintiff put Defendant on notice of her need for leave *because* of that "serious health condition." That turns the focus to the December 6, 2010 call between Plaintiff and Mr. Woodfield. *See Rodriguez*, 545 F.Supp.2d at 518 ("The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a *serious health condition*." (emphasis in original)). In her affidavit, Plaintiff states that "Mark Woodfield called me and

told me that I was on the schedule this week.  I told him that I
needed to get off the schedule because I was in a lot of pain on
account of my back injury, that I needed to see a specialist and
the Workers Compensation Department was not following through on
the recommendation of Dr. Samir Anwar's referral to Dr.
K[o]suri."  (ECF No. 60-1, at 6).[10]   At Plaintiff's workers'
compensation hearing, Mr. Woodfield testified that when he
called Plaintiff and told her she was on the schedule to work,
Plaintiff told him that she could not work.  (ECF No. 60-1, at
71, Trans. 70:8-11).   Later, Plaintiff asked Mr. Woodfield to

---

[10] In its reply, Defendant argues that Plaintiff's affidavit
should be stricken as a sham as Plaintiff is contradicting her
prior testimony in an attempt to create a genuine dispute of
material fact.

"[A] party cannot create a genuine issue of fact sufficient
to survive summary judgment simply by contradicting his or her
own previous sworn statement (by, say, filing a later affidavit
that flatly contradicts that party's earlier sworn deposition)
without explaining the contradiction or attempting to resolve
the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S.
795, 806 (1999).  "Application of the sham affidavit rule at the
summary judgment stage must be carefully limited to situations
involving flat contradictions of material fact."   *Elat v.
Ngoubene*, --- F.Supp.2d ----, 2014 WL 253411, at *23 (D.Md. Jan.
21, 2014) (*quoting Zimmerman v. Novartis Pharm. Corp.*, 287
F.R.D. 357, 362 (D.Md. 2012)).  Defendant's arguments concerning
Plaintiff's affidavit will be rejected.   In certain respects
Plaintiff's affidavit contradicts her prior testimony.   For
example, she previously stated that it was she who called Mr.
Woodfield, but now states that Mr. Woodfield called her.  But in
terms of the material dispute presently at issue – whether
Plaintiff put Defendant on notice of her need for FMLA leave in
the December 6, 2010 phone call – Defendant has pointed to
nothing in Plaintiff's prior testimony that would indicate that
the relevant portions of her affidavit are a "flat
contradiction" to her current position.

confirm that when they spoke she asked him to take her off the schedule because she needed to see a doctor and they were not following through.  Mr. Woodfield confirmed this version.  (*Id.* at 72, Trans. 81:17-21).  In a deposition, Mr. Woodfield stated that Plaintiff told him that "she could not work and that she was going to call me back with more specifics about whether she could do light duty or not."  (ECF No. 47-1, at 65, Trans. 81:13-19).  Taking the evidence in the light most favorable to Plaintiff, there is a genuine dispute as to whether she gave sufficient notice to Defendant that she needed leave because of her serious health condition.

An employer does not have to accept the word of the employee; it can insist that the employee provide medical documentation supporting its leave request.  29 U.S.C. § 2613(a); 29 C.F.R. § 825.303(b); *Rhoads*, 257 F.3d at 382-83.  Defendant's FMLA policy provides that either the employee can initiate the leave request or the employer will initiate it when it has been notified that the employee is absent from work on account of a serious health condition.  The employee will be asked to provide a "health care provider's certification," which is to include "the date on which the condition began, the probable duration, appropriate medical facts concerning the condition, and a certification that the employee is unable to perform the functions of his or her job."  In a situation where

the employee is absent from work for an FMLA-qualifying reason
and the absence has not yet been designated by Safeway as FMLA-
leave, "upon return to work the employee has 3 business days to
notify the Company that the absence may qualify for Family
Leave.  The employee must support the request with the required
health care provider certification," which must be done within
five business days or else the absence will not be designated as
FMLA-leave.  The policy also states that "[w]henever a Health
Care Provider Certification is required, the employee has 15
calendar days from the date of the Company's request to provide
it."  (ECF No. 47-2, at 113-14).

The parties dispute whether Mr. Woodfield told Plaintiff
that Safeway needed medical documentation to back up her leave
request.  Mr. Woodfield states that he did; Plaintiff states
otherwise.  It is undisputed that Plaintiff sought and obtained
a note from Ms. Smith of the Opal Group stating that Plaintiff
should be excused from work from December 3, 2010 to December
10, 2010.  Plaintiff states that she sent it to a fax number
that she was told was Safeway's and that she subsequently called
the store and spoke with someone who confirmed they received the
fax, although she could not remember who that person was.
Defendant responds that the fax number Plaintiff used is not
Safeway's, but instead belongs to CTI Underground, LLC.
Defendant provides an affidavit from the President and owner of

CTI along with CTI's December 2010 phone bill indicating it was the holder of the fax number Plaintiff used. (ECF No. 47-2, at 120-21). This is strong evidence and Plaintiff provides no rebuttal. On this issue, it appears that Plaintiff did not send her note to Safeway on December 7, 2010 as she intended. Defendant does indicate that it received the note after Plaintiff received her termination notice dated December 14, 2010, but does not specify the date. (ECF No. 47, at 21). The FMLA, as codified in Defendant's policy, however, provides that an employee has *fifteen* (15) calendar days to submit a medical certification when demanded. 29 C.F.R. § 825.305(b); *id.* § 825.313(b) ("In the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days from receipt of the request for certification unless not practicable due to extenuating circumstances."). Even assuming Defendant's version of events that it asked Plaintiff for a doctor's note on December 6, it terminated her employment on December 14, well before the fifteen day deadline. Although Defendant points to the fact that Plaintiff did not attend her December 13, 2010 examination with the IME, that examination was in regard to her workers' compensation benefits. (*See* ECF No. 47-1, at 83 (letter to Plaintiff rescheduled IME stating that "[f]ailure to attend this appointment could result in termination of your

26

workers compensation benefits.")) The FMLA and workers' compensation are not the same. An employee's failure to comply with the latter's requirements does not necessarily mean she is ineligible for the benefits of the former. *See* 29 C.F.R. § 825.306(c) ("[T]he FMLA does not prevent the employer from following the workers' compensation provisions and information received under those provisions may be considered in determining the employee's entitlement to FMLA-protected leave. . . . If the employee fails to provide the information required for receipt of such payments or benefits, such failure will not affect the employee's entitlement to take unpaid FMLA leave.").

Defendant's argument that Plaintiff does not have a "serious health condition" will be rejected for similar reasons. It argues that Plaintiff failed to provide a sufficient medical certification to demonstrate a serious health condition. The regulations provide that an employer can require an employee to obtain a medical certification from a health care provider that sets forth the following information:

> (3) A statement or description of appropriate medical facts regarding the patient's health condition for which FMLA leave is requested. The medical facts must be sufficient to support the need for leave. Such medical facts may include information on symptoms, diagnosis, hospitalization, doctor visits, whether medication has been prescribed, any referrals for evaluation or treatment (physical therapy, for example),

27

> or any other regimen of continuing
> treatment;
>
> (4) If the employee is the patient,
> information sufficient to establish that the
> employee cannot perform the essential
> functions of the employee's job as well as
> the nature of any other work restrictions,
> and the likely duration of such inability.

29 C.F.R. § 825.306; *see also* 29 U.S.C. § 2613(b). Defendant
argues that Plaintiff was out of work from June 30 through July
4, 2010 pursuant to a doctor's note and has "never presented
Safeway with another off duty note from a physician again before
she abandoned her job over the Thanksgiving holidays in
November." (ECF No. 47, at 20). Defendant argues that
Plaintiff abandoned her job in late November but, as discussed
in more detail below, that is a supposition that cannot be
accepted at this stage of the proceedings. First, Defendant
does not dispute that Plaintiff spoke with the Assistant Store
Manager and told him she would be out for the week of November
27 and there is no evidence that Defendant took any action at
that time consistent with the view that Plaintiff had abandoned
her job. Second, the medical certification requirement is not
triggered until the employer demands it. Defendant makes no
argument that it demanded such certification until the December
6 call between Plaintiff and Mr. Woodfield. Defendant argues
that Ms. Smith's note was inadequate as it was "unsupported by
any exam, or medical records, did not state why Plaintiff needed

to be out of work or what Plaintiff's medical condition was."
(*Id.* at 21). Even accepting Defendant's version of events that
it demanded Plaintiff to provide medical certification on
December 6, an inadequate certification does not trigger
consequences for the employee until fifteen calendar days after
the demand is made. 29 C.F.R. § 825.313(b). Defendant cites to
*Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572 (6th Cir. 2007), but
the circumstances of that case were very different. There, the
employer found the medical certification insufficient and
carried out its duty to inform the employee of the deficiency
and provide the employee a reasonable opportunity to cure it.
*Id.* at 579. Here, taking the evidence in the light most
favorable to the Plaintiff, there is a genuine dispute over
whether Defendant "jumped the gun," and did not give Plaintiff
sufficient time to provide a medical certification before it
terminated her employment such that Plaintiff has established a
*prima facie* case.

Defendant's final argument is that even if Plaintiff is
eligible for FMLA leave, her failure to comply with Safeway's
attendance and reporting requirements is a valid, independent
reason for discipline. 29 C.F.R. § 825.303(c) provides:

> [w]hen the need for leave is not
> foreseeable, an employee must comply with
> the employer's usual and customary notice
> and procedural requirements for requesting
> leave, absent unusual circumstances. . . .

> If an employee does not comply with the
> employer's usual notice and procedural
> requirements, and no unusual circumstances
> justify the failure to comply, FMLA-
> protected leave may be delayed or denied.

"[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Greene v. YRC, Inc.*, --- F.Supp.2d ----, 2013 WL 6537742, at *8 (D.Md. Dec. 12, 2013) (*quoting Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)); *see also Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (employee's failure to adhere to employer's call-in policy defeated her FMLA interference claim); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (same).

Defendant argues that Plaintiff violated its absentee policy, which states that "absence without notice for three (3) consecutive shifts will constitute job abandonment and will result in termination." (ECF No. 47-2, at 8). Safeway's Employee Handbook states that

> [i]f, because of sickness or other
> emergency, you will not be able to report to
> work as scheduled, it is imperative that you
> advise the person in charge of the store as
> soon as possible. . . . When it is
> necessary for you to be away from work
> because of illness or for any other reason,
> you are required to contact your manager in
> advance. If advance notice is not possible,
> you should make a sincere effort to contact

the manager or person in charge within the
first hour of your scheduled work shift.

(*Id.* at 15). Defendant argues that "Plaintiff's unexcused
absences from work and failure to report to her supervisor from
November 22, 2010 through December 14, 2011 clearly violated
Safeway's Absenteeism policies several times over." (ECF No.
47, at 25).

Defendant seems to acknowledge that Plaintiff gave notice
to the Assistant Store Manager for the week of November 29,
2010. (*See* ECF No. 47-1, at 130 (log of Mr. Woodfield)). The
absences for the week of December 6, 2010 are in dispute and
cannot be considered at this time as unexcused. That leaves
three allegedly unexcused absences: November 22, 23, and 24. On
November 22, Mr. Woodfield's log reflects that she texted "Tom,"
a meat cutter at 8:09 am despite the fact that she was scheduled
to work at 6:00 am that day. She was told to call the store and
never did. The next day, she called "John," the grocery
manager, at 4:45 am and said she was sick. She later called
"Irma" in customer service at about 8:00 pm and said she would
not be in the next day. On the 24th, she again spoke with Tom in
the meat department at 5:00 am and told him she would not be in.
Mr. Woodfield's log reflects that "[Plaintiff] has been told
several times that she needed to call the manager and on all 3

days she had not talked to [Store Manager] or [Assistant Store Manager] as requested." (*Id.*).

Plaintiff has a different version of events.  On November 22, the pain in her back had become unbearable and she called in to say that her back was hurting too much.  She states that she spoke with "John," the stock person, at 5:00 am and left a message to have Mr. Woodfield or Mr. Allan Kelly (head of the meat department) call her, but neither did.  She called later that day and spoke to someone in the seafood department, and left a message for Mr. Kelly to call her.  On November 23 and 24, she also called in, explaining that her back was hurting too much and she could not work.  Plaintiff cannot recall with whom she spoke.  (ECF No. 60-1, at 5).[11]

Stripping away Plaintiff's absences during the weeks of November 29 and December 6, Defendant's argument is that because she allegedly failed to speak with a store manager on these three days, she was eligible to be terminated.  Defendant's actions at this time, however, reflect the fact that they did

---

[11] Defendant argues that Plaintiff's affidavit should be ignored as it is a sham designed to create a genuine dispute of material fact.  As an initial matter, the differences between Plaintiff's affidavit and her prior deposition are not "flat contradictions" such that the affidavit should be disregarded as a sham.  In the deposition, Plaintiff was hazy on the details of whom she spoke to and her reasons for calling out of work.  In her affidavit, she is much more definite.  That is not such a "flat contradiction" to be disregarded at the summary judgment stage.  Furthermore, as will be discussed below, the reasons why she called or who she spoke to are not relevant for this matter.

not view Plaintiff's actions as eligible for termination.   Mr.
Woodfield's log reflects that he reminded Plaintiff of her
obligation to speak with a manager when she calls out of work,
but took no disciplinary action against her.   The earliest
disciplinary action in the record from this time period concerns
her failure to show up or call for her scheduled shift on
December 7.  (ECF No. 47-1, at 132).   A reasonable jury could
believe that Plaintiff's allegedly unexcused absences of
November 22, 23, and 24 were not an independent reason for
taking the disciplinary action against Plaintiff, but instead,
it was only when combined with her later absences that Defendant
initiated termination.   Because those later absences are
potentially protected by the FMLA, summary judgment for
Defendant is not appropriate at this time.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment
filed by Defendant Safeway, Inc. will be denied.   A separate
order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
